Good morning. Good morning, may it please the court, Michael Tsnok, a Deputy Federal Public Defender, appearing on behalf of Josephine Halabi. In this case, the district court erred in denying the mistrial motion after the government elicited an improper statement from its agent about the ownership of the second residence. This is the residence on, is it on Monterey? Monterey Way. Isn't that specifically charged in the indictment, the reference to that house? Yes, it is, Your Honor. What's the problem, talking about the property records for that house? The property record itself was fine, and that's why defense didn't object to that was wholly relevant to the charges, as Your Honor points out. What wasn't proper was the statement or the box checked on that form that said, I'm going to use this as my primary residence. That was... This is public record? Yes. This is a matter of public record? Yes. I'm having a hard time understanding why her ownership of the house and the public records on the house wouldn't be admissible. What's not admissible, or what was improper, was attributing that to her. That is, it's public record that she owns the house, and that really wasn't... Her signature was on the form? Her signature was on the form. What's the problem with attributing it to her? Because that's an additional false statement that all the parties that agreed before the court on before the trial, that wouldn't come in. Did anyone make that argument to the jury? To the jury? No, that argument was not made to the jury. But the jury, you're saying the jury may have taken, have understood it to be kind of a prior bad act, or a different act. Exactly, because the context in which this arose was, that was the very first question that the agent was asked. The form itself was admissible. If they want to talk about, does this show that she owned the property? That's fine. What wasn't admissible was, and the only thing the government asked, the very first question was, did she say this was her primary residence? That was totally inadmissible as far as that inference goes. Ms. Halliby says, I'm lying. I said on this form, this is my primary residence. It isn't. What are you asking us to do? To simply reverse it, or do we send it back for a new trial without the document, or without the line of testimony? What happens next if you win? That's exactly what I'm asking, Your Honor. To reverse and remand. For a new trial? For a new trial. You have a client, I understand right, who did no time. That is to say, there was no incarceration time for the client. Isn't that right? That's correct. Is that true? So you're kind of taking the chance, it goes back. In a way, you've already succeeded pretty good on a pretty difficult case, it seems to me. Why do you want to go back and do this again? My client, Ms. Halliby, is a very wonderful woman. As a result of this case, it's true, she didn't do any time, but the Social Security benefits that she was receiving created a large part of her being able to live. Is she not able to receive any Social Security? By virtue of this conviction, she's been denied all for the Social Security benefits. I sort of have the same question, asking it a different way. Assuming what you argue was error, why wasn't it harmless error? Wasn't there other information that came in? There was, but the single issue at trial was, and the reason, it was clear that she had Did she consciously lie about those when she was interviewed by Ms. Rodriguez at the Social Security office? Now, there was a lot of contention about that. I don't know. Even putting aside that one error that you suggest, it seems as though she had to know. She had the other property. She purchased it. She did. So the issue is, did she know that that disqualified her, and did she lie about that when she was talking to the clerk at the Social Security office? She clearly, when the agent talked to her a month subsequently, she admitted all of that. When asked specific questions, do you know another house? Is this your money in the bank account? And she said yes. That disqualified her, and she freely admitted that. So the issue is, was she consciously lying about this when they were doing this or thinking about buying a second house? Was she flustered? Was she confused? Was there something else going on during that meeting that made her not understand totally what was going on, which would negate any intent to defraud the Social Security agency and make a knowing false statement, which was what she was convicted of. Did I understand you correctly to say that this document was admissible? The document itself was admissible. I suppose if counsel had been more careful, they would have redacted that portion of it that said this is, you know, I'm going to use this as my principal residence. And there was no request for redaction? No, there wasn't. And I've got to say I'm at a loss as to why it would be redacted if this is a public record regarding the property that's charged in the indictment. Because the portion that's at issue here that I'm using this as my principal residence, well, one, it's not relevant to this case unless that actually was her statement. But more important, that if we're relevant to showing an additional lie, this is my principal residence, when in fact it isn't, then that's improper character evidence. The judge gave a limiting instruction, didn't she? The judge offered to give a limiting instruction. Defense counsel declined it on the ground that it would just point this out. And at that point, that was it. Okay, well, if that's the decision that counsel made, so be it. The judge, I guess, also told the prosecutor don't argue this in closing, right? That was the remedy requested by counsel. And they didn't argue it in closing? They did not argue it. Okay. Did you want to reserve some time, Mr. Tanaka, or do you have where to go? I'll reserve the remainder of my time. Thank you, sir. May it please the Court. Sheila Nagaraj on behalf of the United States. I want to start with some of the questions the Court raised to my opposing counsel and address those. First, with respect to the particular four lines of testimony, essentially, that are being objected to here, one, to go to Judge Silverman's point, a large portion of that was within the document itself, and that is that Ms. Hollaby, the defendant, was not using the Monterey Way property as her primary place of residence. That's important for a couple of reasons. It's important not only because it's direct evidence of defendant's guilt as charged in Counts 6 and 7, and that is that she made a false statement at the time of her interview to Social Security Administration Representative Ms. Rodriguez that she owned only her property on Monterey Court and no other real property. And as charged in the indictment, the government charged her as owning a second property, that is the property on Monterey Way. And as the follow-up questions by the prosecutor in this case made clear, she was trying to get to the point that Ms. Hollaby wasn't living at the Monterey Way property. That would have been a permissible use of the property if she had somehow sold the Monterey Court property in the interim and was using it as her primary place of residence. That's permissible under the SSI requirements. The next question after she asked Agent Chebillion about, was she living there, he says no. He talks about going to that home and finding that there were, in fact, tenants there that she was collecting $1,000 a month in rent from. Again, that's relevant evidence of Counts 6 and 7, because within that statement that she made on June 6, 2011, she said she had no other income other than her SSI benefits at that time. This was clearly an amount of money that she was getting at that time based on the investigation that Agent Chebillion had done. I would also say that this was not the first question that the prosecutor asked about the form. She asked the agent if he knew what the form was, how he was familiar with it. He stated it was a form created by the San Bernardino County Assessor's Office. It's not a form by the Social Security Administration or some other federal agency. He said that he did not know who had actually filled out the form, if it was, in fact, her or not. And then the prosecutor got to the box on the form, which everybody agrees is admissible as a public record. Nobody contests that. And asked, was it her? Was that box checked about the primary place of residence? He says, yes, it was. She asks, was she, in fact, living there? That's when she gets into that question and the follow-up question about the rental income. And I would also note, as Judge Silverman noted, no request for redaction was made. I think if, as one of the trial prosecutors on the case, I think if defense counsel had come to us and asked us to redact that portion because of the theory that it could lead to a misleading inference by the jury about another false statement, we certainly would have taken that into consideration. And I can say we very likely would have acceded to that request because that was not our... In the argument to the jury, what use was made of the document, if any? With respect to argument to the jury, the real purpose of that document, Your Honor, was to make it clear for the jury that this was the second property that she purchased. We also had the grant deed in evidence, but that did not have the address on it. It had the parcel number. So we wanted to make it clear for the jury this is the same property that you saw the picture of because we introduced photographs of the property. This is the only document that had the address of the Monterey Way property. Do you want to get a cup of water? I'll try to keep going, Your Honor. Thank you. So given that fact and given the burden of proof that the government had, we didn't want the jury to be confused about the course of conduct as the defendant committed it. I think as both of our briefs noted, the district court allowed the government to introduce evidence of loss beginning from 2009 with the purchase of the Monterey Way property forward. So this is really the first document that shows that, the preliminary change in ownership. And so I think it really is several things here about these lines of testimony that the defendant now objects to. First, the vast majority was contained in the document itself, which went back with the jury. They were permitted to use it and presumably looked at it during their deliberations. Second, the witness testified that he did not know who filled the form out. The form was not made under penalty of perjury. It was not a federal government document. Second, I think it was inextricably intertwined with the story that the government was telling. I think this court has held that it's permissible for the government, in order to tell a coherent and comprehensible story of the defendant's course of unlawful conduct, that we be allowed to introduce evidence and testimony that will explain that. And I think, again, here it does that. The district court allowed the government to introduce evidence beginning in 2009. And I think, as I believe Judge Wardlaw noted, there was far, far more damaging testimony and evidence that was introduced here. For example, in Government's Exhibit 21, which is the defendant's statement to Agent Chebillion on August 3, 2011, she states that she was an escrow on a third home. So the existence of a second home and the fact that she wasn't living there, I submit, Your Honors, that that fact is much less damaging than the testimony about ownership of a third home and escrow. We also heard, or rather the jury also heard testimony about the amount in her Chase Bank account statement between the months of May and August 2011, which is charged in Counts 3 through 5. In May of 2011, the jury saw her Chase Bank account statement. It showed a beginning balance of $75,000, which was withdrawn as a home equity line of credit from her first home, her place of residence. That's exponentially more than the $2,000 maximum allowable limit for SSI recipients. She didn't report any of this to the SSA representatives as required. The jury also saw evidence of a notice that was mailed to her in November of 2008 reminding her of her obligations that she needed to report this, that she needed to tell someone at SSA immediately if she was going to be thinking of obtaining additional resources outside of the permissible resources, which are the primary place of residence, a car, $2,000 in assets. Sorry, I think I will get a little water. And finally, Your Honors, I think I would submit that, and this goes to both the general course of the fraud that the government showed over the two-day trial. We had 23 exhibits, we had four witnesses, and the ownership of all of these additional assets was never really in dispute. What was in dispute was the defendant's understanding of her obligations. To that end, the government presented testimony of several individuals, not only at the SSA who had interviewed her, but even an individual who had worked at the retirement home where she lived at and observed her filling out forms on a fairly regular basis. She testified that the defendant appeared to have no trouble filling out these forms, making work requests, maybe for her bathroom to be repaired, for example. She had no trouble conversing with other residents of the retirement home. And this was very fleshed out with the testimony of the government witnesses, the SSA officials who interviewed her, both prior to her making the false statement and when Agent Chebillion, the case agent, interviewed her. This was simply not a case of where the defendant had maybe $2,005 in assets or some de minimis amount over. The jury heard all of this evidence, saw all of the exhibits. It found it compelling, Your Honors, and it returned its verdict only a matter of hours. And the government would submit that under whatever the proper standard of review, the government would submit that it is plain error review as a forfeited evidentiary claim. But even under the still highly deferential abuse of discretion threshold standard, the defendant simply cannot meet that standard. And the government submits that the defendant's conviction should be affirmed in all respects. Unless the Court has questions, I'll submit. I guess not. Thank you very much. Mr. Chinaka, back to you. At the risk of beating a dead horse, I think there's one point that is getting a little confused here, and it's important. And that is, though this form was totally proper to be used to show that she, in fact, owned that property on Monterey Way, it wasn't proper for it to be used as, I am using this as my principal residence. That's a lie. That's my statement. That's my lie. That's an additional lie. Well, if it had some limited admissible value and the judge offers to give a limiting instruction explaining what it is and you decline it, and then the judges don't argue the impermissible part in closing argument and they don't argue the impermissible part in closing argument, I'm having a hard time seeing what the gripe is. The gripe is the defense perhaps, it's their mistake in some sense, did anticipate that the one portion of this form that the government would zero in on at the inception of its questioning was the one for which the purpose was inadmissible. So at that point the damage was done, perhaps with a little bit more prescience and foresight, like we said, they could have asked for redaction. Now the government now says, well, if they'd done that, we certainly would have agreed to that because we didn't need it for that purpose. It's curious though that if that is really the case, then on this entire form, why is that the one question they asked about? The one specific box on that form, this huge long two page form, the thing that they zeroed in on immediately was, did you lie about this? Again, it was just another lie of yours essentially, not do you own the property? And that's our gripe. At that point, the damage was done. You can either ask for limiting instruction that makes this clear, or just hope that the jury didn't catch it and move on. But it's another lie. It's a lie in a different context. It sort of like shows a scheme or could show a scheme. This woman has a history of lying about this to avoid taxes, to get social security benefits she's not entitled to. Her defense is a sham. And that's why we're asking for reverse. Thank you, Mr. Tanaka. Thank you, counsel, as well. The case just argued is submitted. Good morning.
judges: Silverman, Sack, Wardlaw